THE CITY OF WILMINGTON, a municipal corporation of the
State of Delaware,
Plaintiff,

*vs.*

DELAWARE COACH COMPANY, a corporation of the
State of Delaware,
Defendant.

*New Castle, May 4, 1967.*

344

*Stephen B. Potter,* Asst. City Sol., and *O. Francis Biondi,* City Sol., for City of Wilmington, plaintiff.

*Frank O'Donnell* and *Stanley C. Lowicki,* of O'Donnell, Hughes & Lowicki, Wilmington, for defendant.

DUFFY, Chancellor: This is a suit brought under the Declaratory Judgment Act by The City of Wilmington against Delaware Coach Company. In brief, the City asks for a declaration by the Court that the Coach Company breached its contract by failing to provide adequate and continuous public transportation and that the City had the right to terminate that contract.[1]

Delaware Coach moved under Rule 12(*b*)(1), *Del.C.Ann.* to dismiss the complaint for lack of jurisdiction over the subject matter and filed affidavits in support of the motion. On the present record (complaint and affidavits), the facts are as follows:

On May 23, 1938 the City granted to Delaware Electric Power Company the "right, privilege and franchise" to operate trolley coaches, buses and similar vehicles for public passenger transportation in and through the City of Wilmington. By its terms the franchise ends on or about August 25, 1968. For present purposes Delaware Coach is the successor in interest to Delaware Electric Power Company.

Section 12 of the resolution provides in part that:

"The Company shall not discontinue or abandon any of the operations herein authorized from any street or portion of a street unless and until such discontinuance or abandonment has been authorized by the Board of Directors of the Street and Sewer Department."

On November 16, 1966 Delaware Coach discontinued providing public transportation in the City of Wilmington and this was done without authorization from the City or the successor agency to the Street and Sewer Department. To the date of this opinion, such service has not been restored.

---

1. In form, the contract at inception was a resolution adopted by the Board of Directors of the Street and Sewer Department of The Mayor and Council of Wilmington which was accepted by the Coach Company's predecessor.

On February 7, 1967 the Council of the City of Wilmington (its legislative body) adopted a resolution which recites, among other things, that the Coach Company

> "* * * abandon[ed] and discontinue[d] all of its operations without the authorization of The City * * *, There is no reasonable expectation that the Delaware Coach Company will resume its services * * * [the absence of such service] has resulted in great detriment and injury to the people of the City of Wilmington who are wholly dependent upon the Company for public transportation. * * *"

It was then resolved that "The Resolution and Franchise of May 23rd, 1938 are hereby repealed and terminated."

On November 16, 1966, the date on which public transportation service was discontinued, Delaware Coach employees, who are represented for collective bargaining purposes by the Amalgamated Transit Union, Division 842, began a strike and since that date have not returned to work. In short, the City has been without public transportation for more than five months.

In February 1967 the City, together with New Castle County (part of which is also served by Delaware Coach), filed a complaint with the Delaware Public Service Commission seeking a revocation of Delaware Coach's Certificate of Public Convenience and Necessity for operating rights. The Commission issued a rule upon the Coach Company requiring it to show cause why those rights should not be terminated. Thereafter, Delaware Coach filed an action in the United States District Court for the District of Delaware as a result of which that Court issued a preliminary injunction restraining the Commission from proceeding further upon the complaint. *Delaware Coach Company v. Public Service Commission,* 265 F.Supp. 648, Opinion dated March 15, 1967.

\* \* \*

Delaware Coach argues alternatively: (1) the City has an adequate remedy at law; and (2) the Public Service Commission has exclusive jurisdiction over the subject matter of the complaint; and (3) the exercise of jurisdiction by this Court would interfere with the right to free and unfettered collective bargaining given it by the Labor Management Relations Act. *29 U.S.C.* § 141.

## I

The declaratory judgment statute, 10 *Del.C.* § 6501, provides in pertinent part:

> "In cases of actual controversy, * * * the Court of Chancery * * * upon petition, declaration, complaint, or other appropriate pleadings, may declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed, * * *."

A threshold question is whether or not there is an "actual controversy" between the parties as a result of which the Act may be invoked. Delaware Coach has not yet answered and in its brief "neither admits nor denies the validity of the franchise as set forth in the City of Wilmington's complaint". Hence the Coach Company argues that there is not before the Court an actual controversy which is fundamental to jurisdiction. *Wilmington Manor v. Grant*, 34 *Del.Ch.* 487, 105 *A.2d* 783 (1954). See, also, *Marshall v. Hill*, 8 *Terry* 478, 93 *A.2d* 524 (1952).

The complaint does not allege in so many words an actual controversy. But it does allege that the Coach Company has failed to provide public transportation in the City and that it has "breached the terms and conditions of the * * * contract" with the City. Section 12 of the resolution provides that "The Company shall not * * * abandon any of the operations herein authorized" without permission from the Street and Sewer Department. The City Council's 1967 resolution states as a fact that this has happened, operations were abandoned. There is not in the agreement a specific provision as to the rights and duties of the parties in the event the Coach Company is struck by its employees.

The affidavit of Charles W. Croft, Vice President and General Manager of Delaware Coach, filed in the reply brief states in some detail the action which the Coach Company has taken in negotiating or attempting to negotiate with the Union. That affidavit ends by stating, "the Company's attitude of being desirous to return service to the citizens continues." And a fair reading of Mr. Croft's entire affidavit indicates a Company contention that it has not abandoned its operation as alleged by the City. The Company argues this point in

its brief, saying that it has continuously negotiated with the Union "to return to work".

▮ Thus when the complaint and its attached exhibits are compared with Coach's affidavits a controversy is documented in both form and substance. And this controversy meets the tests summarized by Judge Herrmann in *Marshall v. Hill, supra:* it involves the legal (contractual) relations of the City, which seeks relief; the claim is asserted against one who has an interest (a franchise) in contesting that claim; the interests are real and adverse (the City asserting that Coach has abandoned its franchise while Coach states it wants to return transit service); and the issue is ripe for judicial determination (in view of the Council's findings and resolution).

Therefore, upon the record which the parties have made in this Court (and by which I must be guided), I find that there is an actual controversy between them as to whether or not Coach has abandoned its operation of a transit system in the City.

## II

Delaware Coach contends that the City has an adequate remedy at law for the allegations made in the complaint. In response the City argues that the nature of the declaratory judgment motion is essentially equitable, that a decree in its favor would require injunctive implementation, and that equity has jurisdiction to remove the easement in city streets (a cloud on title) which the contract gave Coach.

### A.

▮▮ The declaratory judgment statute does not increase or enlarge this Court's jurisdiction and it does not change the jurisdictional relationship between the Superior Court and the Court of Chancery. *Suplee v. Eckert,* 35 *Del.Ch.* 428, 120 *A.2d* 718 (1956). It follows, therefore, that unless there is some special basis for equity jurisdiction, measured by traditional standards, this Court does not have jurisdiction. In short, the equitable character of the declaratory judgment action is not a sufficient basis for jurisdiction. That is plain from the very language of 10 *Del.C.* § 6501 which specifically confers jurisdiction upon the Superior Court and from the decision in *Suplee v. Eckert, supra.*

## B.

■■ The City argues in its brief that "if a decree has to be entered putting into practical effect the judgment of the Court, it would be an injunction" against Delaware Coach. That may be. But equity jurisdiction, at inception of the lawsuit, may not be bottomed on the kind of relief to which the City may be entitled if it prevails. Here the City asks, initially and primarily, for a declaration of rights under the contract. A contract, breach and termination are alleged. And a declaration as to rights and duties of the parties flowing from that sequence is now sought, not injunctive relief.

■ As to relief, the Declaratory Judgment Act specifically permits post-judgment applications to a court having jurisdiction to grant the relief sought. Compare *Olson Brothers, Inc. v. Englehart, C.A.* 1543 (Letter Opinion, V. C. Short, 4/27/67); *Clemente v. Greyhound Corporation, 2 Storey* 223, 155 *A.2d* 316 (1959). Thus, 10 *Del.C.* § 6502 says:

> "Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party, whose rights have been adjudicated by the declaration, to show cause why further relief should not be granted forthwith."

■■ A declaratory judgment entered by the Superior Court upon the complaint which the City has filed here would be *res judicata*. *Borchard, Declaratory Judgments* (2 ed.) 438. If such a judgment were given in the City's favor, then that judgment, coupled with the showing normally required for injunctive relief, could be pleaded in this Court under 10 *Del.C.* § 6502 and an injunction would issue against Coach.

■ But it would violate the separation of trial jurisdiction which is established in this State to take jurisdiction of what is essentially a contract case, solely on the basis that coercive relief might be due the City if it prevails. A declaration of rights is the first order of business and there is a readily available statutory basis for application here, if injunctive relief is required. *Borchard, supra,* 441.

It follows that the prospective possibility that injunctive relief may be required is not a basis for equity jurisdiction in this action for a declaration of rights under a contract.

## C.

Next, the City argues that this Court has jurisdiction because the contract gave Coach an easement in city streets for a term of years and that equity has jurisdiction to remove what amounts to a cloud on title. It is contended that in the light of Delaware Coach's abandonment of the contract and the 1967 resolution of City Council, the Court should take jurisdiction in order to judicially remove rights which were granted by the contract.

Delaware Coach's response to this argument is to the effect that the law of real property has no application to this dispute.

In certain fact situations this Court has jurisdiction to remove a cloud on title to real property. That is the express holding in *Suplee v. Eckert, supra,* the law of which has not been disputed by Coach.

Preliminarily, I note the City's argument which characterizes the contract as a "franchise" and Coach, while it commented on that argument, did not contend to the contrary. I conclude that the 1938 contract is a franchise. 37 *C.J.S. Franchises* § 1. But legally labelling the contract as a franchise gives it no special significance under the City's cloud-on-title argument. A franchise, as such, does not create any interest in real property. 37 *C.J.S. supra,* § 8(*a*)(3); 23 *Am.Jur., Franchises* § 5.

Hence the inquiry narrows as to the interest which this particular franchise gives Coach in Wilmington streets, and as to this there is some difficulty. While the record facts are clear, certain other facts not of record have been suggested which might make academic any final ruling as to the issue.

As I have previously indicated, Coach's franchise, as pleaded in the complaint, consists of the resolution adopted by the City agency in 1938 and the acceptance thereof by the Coach Company's prede-

cessor. That resolution gave the Company broad rights to conduct a system of transportation and the right to place equipment on, over and under many City streets. Thus Section 1 provides:

> "Effective at the time and in the manner hereinafter set forth, Delaware Electric Power Company, a corporation of the State of Delaware (hereinafter called 'the Company'), is hereby granted the right, privilege and franchise to operate within the limits of the City of Wilmington a system of transportation conducted by means of the use of electric trackless trolley coaches, together with the right to construct, erect, install and maintain all poles, wires, cables, conduits, transformers, equipment and appurtenances necessary or convenient in the operation of said system, on, over, under and along certain streets, avenues and public ways, or portions thereof of the City of Wilmington, as set forth in the schedule hereunto annexed and marked 'Schedule 1— Streets on which Electric Trackless Trolley Coaches are to be Operated'. The portions of the streets designated in said schedule shall in all instances include the intersections adjacent to both ends of the designated portions. The right, privilege and franchise herein granted shall include the right, privilege and franchise to construct, erect, install and maintain on, over, under and along any other streets, avenues and public ways or portions thereof, such additional poles, wires, cables, conduits, transformers, equipment and appurtenances as may be necessary or convenient for the purpose of conveying electric current from power stations or substations to the poles, wires, cables, conduits, transformers and other equipment situated on the streets, avenues and public ways or portions thereof set forth in said Schedule 1.
> * * *"

And Section 2 provides:

> "The Company is hereby granted the right, privilege and franchise to enter upon the said streets, avenues and public ways for the purpose of constructing, erecting, installing, maintaining and repairing all such poles, wires, cables, conduits, transformers, equipment and other appurtenances necessary or convenient for the maintenance and operation of the electric trackless trolley coach system of transportation hereinabove described. The Company is hereby granted the right and privilege to retain on,

over, under and along any of the said public streets, avenues and public ways such wires, poles, cables, conduits, transformers, equipment and appurtenances as now exist and as may be necessary or convenient in the operation of said electric trackless trolley coach system of transportation; and further, to add such additional wires, poles, cables, transformers, conduits, equipment and other appurtenances as may be required. * * *"

■ Much if not all of this language is obviously directed toward the facilities necessary to the operation of electrically-powered trackless trolleys. And it is common knowledge, and counsel have so advised the Court, that Delaware Coach has not operated that kind of vehicle in the City for many years.

At oral argument counsel for the Coach Company indicated that the right to install and maintain equipment on city streets was no longer pertinent to the franchise. Thereafter the Court, in conference with counsel, was advised that there have been many modifications to the 1938 agreement. And the City has since filed an amendment made in 1940 in which certain routes were surrendered and others added. But other amendments, whatever they may be, are not of record.

Counsel for Delaware Coach has advised the Court that it is willing to stipulate that the Company "has surrendered its right to erect poles, wires, or underground conduits." But I have no way of knowing whether any such surrender was coextensive with the rights given Delaware Coach by the 1938 agreement. And, on this point, it should be noted that the Court is not called upon, at this time, to examine the way in which Delaware Coach actually operated under the franchise. Inquiry is directed only to the basis of equity jurisdiction which the City has asserted.

■ It thus appears that the 1938 contract (with the provisions covering trackless trolleys) was submitted to the Court and a declaration of rights was sought. But post-argument developments have created some uncertainty as to whether the parts of the contract which I have discussed here (the right to use city streets in association with the trackless trolley systems) are still a matter of contract between the parties. This has significance because of the City's contention that removal of the cloud on title to its streets is an independent basis

for equity jurisdiction. Because of the uncertainty, I decline at this time to make a final ruling on Coach's motion.

Counsel will be given an opportunity to supplement the record if they desire to do so. Meantime, I also defer consideration of Coach's arguments as to the exclusive jurisdiction of the Public Service Commission and the impact of the Labor Management Relations Act.