**DIEBOLD COMPUTER LEASING, INC.,**
Plaintiff Below, Appellant,

v.

**COMMERCIAL CREDIT CORPORATION**
and Computer Financial Corporation,
Defendants Below, Appellees.

Supreme Court of Delaware.

June 1, 1970.

S. Samuel Arsht, Andrew B. Kirkpatrick, Jr., and Richard S. Paul, of Morris, Nichols, Arsht & Tunnell, Wilmington, and Debevoise, Plimpton, Lyons & Gates, New York City, for plaintiff below, appellant.

E. Norman Veasey, Franklin S. Eyster, II and Mason E. Turner, Jr., of Richards, Layton & Finger, Wilmington, for defendants below, appellees.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice:

This appeal requires decision as to the subject-matter jurisdiction of the Chancery Court in this action for injunction or declaratory judgment.

### I.

The plaintiff Diebold Computer Leasing, Inc. (hereinafter "Diebold") seeks an injunction restraining the defendants, Commercial Credit Corporation and Computer Financial Corporation (hereinafter collectively "Commercial") from taking threatened action which Diebold contends would constitute a breach of contract between the parties; and, alternatively, for a declaratory adjudication of the rights of the parties under the contract.

In the course of ruling upon certain discovery matters, the Chancery Court raised, *sua sponte,* the issue of its jurisdiction over the subject matter of the suit. After considering the contentions of the parties, in which they took adversary positions, the Chancery Court ruled that it lacked jurisdiction to grant either the injunctive relief or the declaratory judgment sought therein. The plaintiff then moved for

leave to amend its complaint in an effort to remedy the deficiencies the Court found to exist; leave to so amend was denied. Thereupon, the Chancery Court ordered that the action be dismissed if Diebold did not elect, within 60 days, to transfer the cause to the Superior Court under 10 Del.C. § 1901.[1] Diebold appeals.

## II.

The subject-matter jurisdiction of the Chancery Court depends solely, at this stage, upon the allegations of the complaint and a determination of what the plaintiff really seeks by the complaint; for it is settled that the existence of jurisdiction is to be ascertained as of the time of the filing of the complaint. E. g., Mantell v. International Plastic Harmonica Corp., 141 N.J.Eq. 379, 55 A.2d 250 (1947). We view the material factual allegations of the complaint as true, as though on a motion to dismiss the complaint for want of jurisdiction. See DuPont v. DuPont, 32 Del.Ch. 413, 85 A.2d 724, 726 (1951).

The following is the factual situation set forth in the complaint:

Diebold is engaged in the business of leasing computers and related equipment. In 1967, Diebold entered into a contract with the defendant Commercial Credit Corporation, a finance company. Subsequently, Commercial Credit Corporation assigned the contract to the defendant Computer Financial Corporation, a subsidiary, and the latter assumed all obligations thereunder.

The contract is a Loan Agreement obligating Commercial to extend to Diebold, until 1977, a revolving line of credit in the maximum principal amount of $75 million. Under the Agreement, Commercial is obligated to advance from time to time funds to be used by Diebold to finance the purchase of computer equipment for leasing to its customers.

It became "of utmost importance" for Diebold to "promptly take steps to diversify through the formation of affiliated corporations which will engage in other businesses." Such diversification may be accomplished via one or more of the following routes: (1) a reverse merger, i. e., the formation of a holding corporation which would engage in the diversification directly or through subsidiaries, leaving Diebold as a subsidiary of the holding company; (2) the formation of a company which would make a tender offer to the stockholders of Diebold and thus become a holding company; and (3) the formation of subsidiary corporations which would engage in diverse businesses other than computer leasing.

Diebold advised Commercial of its need to diversify and its intention to proceed to that end via one or more of the specified routes. Diebold did not consider Commercial's consent required under the Agreement. Commercial responded that any such action was prohibited by the terms of the Loan Agreement unless Commercial consented; that it would not consent; and that it would regard Diebold to be in default if it proceeded with any of its announced plans of diversification.

By taking this position, Commercial made it impossible for Diebold "to function as a business enterprise" because, as is alleged in the complaint:

" * * * Unless restrained, defendants, by merely giving plaintiff notice

[1]. 10 Del.C. § 1901 provides in part:
 No civil action, suit or other proceeding brought in any court of this State shall be dismissed solely on the ground that such court is without jurisdiction of the subject matter, either in the original proceeding or on appeal. Such proceeding may be transferred to an appropriate court for hearing and determination, provided that the party otherwise adversely affected, within 60 days after the order denying the jurisdiction of the first court has become final, files in that court a written election of transfer, discharges all costs accrued in the first court, and makes the usual deposit for costs in the second court. * * *."

of default could cut off all further borrowings under the Loan Agreement, declare the full amount outstanding thereunder (approximately $70,000,000 on August 31, 1969) immediately due and payable, and exercise all rights of a secured party with respect to the equipment leases of plaintiff pledged to secure plaintiff's loan under the Loan Agreement. If any such action were taken by defendants, the result would do irreparable harm to the business and credit of plaintiff, making it impossible for plaintiff to continue to function as a business enterprise. Plaintiff has no adequate remedy at law."

Diebold intends to pursue one of its announced plans of diversification, Commercial's statement of intent to declare a default under the Agreement notwithstanding; and Diebold has advised Commercial of that intent.

This is the basic factual situation presented by the complaint in this cause. Upon the basis thereof, the plaintiff prayed (1) that the Court enjoined Commercial "from taking any action as though a default under the Loan Agreement had occurred when the plaintiff pursues any of the means of diversification" specified; and (2) that the Court declare that the "Loan Agreement will not be violated by plaintiff's pursuing any of the means of diversification herein described or, alternatively, declare which of such means of diversification will not violate such Loan Agreement."

After the Chancery Court held that it was without jurisdiction to grant relief upon the basis of such allegations, Diebold unsuccessfully tendered an amendment to its complaint alleging:

"In the light of defendants' unequivocal threat to declare a default under the Loan Agreement should plaintiff pursue

its right to diversify thereunder in the above-described manner, plaintiff cannot properly and cannot as a practical matter induce a third party to proceed with significant diversification negotiations to a meaningful stage. Hence, defendants are presently interfering with plaintiff's right and urgent need to diversify its business operations and are presently preventing plaintiff from exercising its rights under the Loan Agreement. If plaintiff cannot obtain the injunctive relief herein sought, its only alternative would be to proceed with diversification as hereinabove described, which would concurrently bring about the declaration of default threatened by defendants for which damages would be an inadequate remedy."

### III.

The Chancery Court took the view that "the case is basically concerned with the construction of a business contract entered into by and between competent and independent parties"; that Diebold "asks the Court to enjoin defendants from committing a possible future breach of their loan agreement as a result of Court approval of one or more of plaintiff's expansion plans." The Chancery Court further stated that "no basis for traditional equitable jurisdiction is present" in the instant case; that Diebold has not made "a case for injunctive relief on the facts as pleaded"; and that

"* * * the basic issue is actually one of contract construction. What plaintiff actually seeks is a determination of whether or not a contemplated act would constitute. such a breach as to entitle the defendants to terminate their obligations under the contract between the parties. Plaintiff has already stated that it would not take any action if the Court found such a breach to be threatened by a contemplated plan.[2] On

---

2. This statement does not appear in the complaint which is the record upon which the present jurisdictional question must be

determined. A similar indication by Commercial somewhere in the proceedings below, that it would abide by the decision

the other hand, if the Court were to find in favor of the plaintiff, there is no right to injunctive protection of such a judgment merely because plaintiff has prevailed. To grant injunctive relief in such a case would indeed be redundant."

The Chancery Court relied upon City of Wilmington v. Delaware Coach Co., 43 Del.Ch. 343, 230˙A.2d 762 (1967) as dispositive in reaching these conclusions, stating that Jefferson Chemical Co. v. Mobay Chemical Company, Del.Ch., 253 A.2d 512 (1969) is not applicable because of the absence of a traditional equitable jurisdiction.

## IV.

■■■ We differ with the Chancery Court in that we find on the face of the complaint a sufficient showing of a traditional equitable jurisdiction to warrant retention of the case by the Chancery Court; i. e., the jurisdiction to prevent a threatened breach of contract for which breach damages would not be adequate. While the showing is not strong, it is adequately strengthened, we think, by the amendment to the complaint tendered by the plaintiff and rejected by the Court. It is our opinion that leave to file the amendment should have been granted under the liberal amendment policy of Chancery Rule 15, Del.C. Ann.

The jurisdiction of the Chancery Court to enjoin a threatened breach of contract, for which breach damages would not be adequate, is unquestioned. It is agreed that the breach against which preventive relief is sought in equity need not have been actually committed at the time of the application for relief; it being a sufficient ground of judicial interference that the defendant, as of that time, claims and insists upon his right to do the act complained of. And equity will take jurisdiction if the defendant has manifested an intent to act, even though it is not clear

at the outset whether the action which the defendant is about to take is in violation of the contract. Kerr on Injunctions (6th Ed.) 411; 2 High on Injunctions, § 1137, p. 1119; Randolph v. Wilmington Housing Authority, 37 Del.Ch. 202, 139 A.2d 476 (1958); Tull v. Turek, 38 Del. Ch. 182, 147 A.2d 658 (1958); Cramer v. Lewes Sand Co., 15 Del.Ch. 329, 138 A. 78 (1927).

The question is whether the above rules apply here. We think they do. On the face of the complaint, it appears that as of the time of the institution of this action, Diebold intended to proceed with one or more of its plans for diversification; that, as of that time, Commercial claimed and insisted upon its right to declare a default under the Loan Agreement if any such plan were initiated; but that Diebold intended to pursue a diversification plan, nevertheless, if it could.

This is the kind of collision course equity serves to avoid in the exercise of its traditional jurisdiction of preventing a threatened breach of contract. The complaint presents a proper situation for the invocation of that equity jurisdiction in that, by the complaint, Diebold seeks to avoid that collision course.

The jurisdictional situation in this case seems to have become confused by positions taken by the parties after the institution of this action. Apparently, somewhere in the litigation, Diebold indicated that it would refrain from further action, and would not proceed with any of its plans for diversification, even if it could, until the Chancery Court found that it had the right to do so; and apparently, somewhere in the litigation, Commercial indicated that it would not declare a default if the Court found that Diebold was entitled to pursue any of its proposed plans of diversification within the terms of the Loan Agreement. Neither of these positions affect the jurisdiction of the Chan-

---

of the Court on the substantive contract questions, is not properly a part of the

record on which the present question must be decided.

cery Court which, as we have said, is to be ascertained for present purposes as of the time of the filing of the action. As of that time, it sufficiently appears from the complaint that Diebold intended to diversify and Commercial intended to declare a default; and that Commercial's intent so to do was sufficiently actual, impending, and unconjectural to warrant retention of jurisdiction of the case by the Chancery Court. 1 High on Injunctions (4th Ed.) § 22, p. 37.

We conclude, therefore, that subject-matter jurisdiction in Chancery appeared in this cause in the form of the traditional jurisdiction of equity over threatened breach of contract.

### V.

That jurisdiction was not divested by our Declaratory Judgment Act, 10 Del.C. § 6501.[3] While it is conceivable that, under § 6501, Diebold may have brought a declaratory judgment action in the Superior Court for a construction of the Loan Agreement, and that, for practical purposes, such action may have furnished an adequate remedy, it does not follow that the creation of such remedy by § 6501 divested the Chancery Court of the traditional jurisdiction we have found it possessed in this case. It is settled that Chancery jurisdiction remains, notwithstanding the statutory creation of jurisdiction of the subject matter in another court and a remedy elsewhere that may be adequate, unless the new remedy is equivalent and is expressly made exclusive in the other tribunal. DuPont v. DuPont, 32 Del.Ch. 413, 85 A.2d 724, 729–730 (1951).

 Obviously, the Declaratory Judgment Act does not fulfill the tests required for the ouster of equity jurisdiction. The element of express exclusiveness is lacking; and, as noted by the Chancery Court in the instant case, a declaratory judgment by the Superior Court might well require a return to Chancery for enforcement; thus, the element of equivalent remedy is also lacking. Any overlapping jurisdictions created by § 6501 are concurrent.

### VI.

There remains the question of the jurisdictional tests for invocation of the Declaratory Judgment Act in Chancery. Our foregoing conclusion, that the complaint sufficiently discloses a traditional basis of equity jurisdiction, goes a long way toward answering that question in the instant case.

 Jurisdiction under the Declaratory Judgment Act is based on the question of whether law or equity traditionally would have jurisdiction of the subject matter if the controversy should develop to a later stage; of whether the issues raised would be presented in a legal or equitable action if coercive relief were being sought. Specifically, the Chancery Court has jurisdiction in a declaratory judgment action if there is any underlying basis for equity jurisdiction measured by traditional standards. Jefferson Chemical Co. v. Mobay Chemical Co., Del.Ch., 253 A.2d 512 (1969); Highlights for Children, Inc. v. Crown, 41 Del.Ch. 244, 193 A.2d 205 (1963); City of Wilmington v. Delaware Coach Company, 43 Del.Ch. 343, 230 A.2d 762 (1967). In the instant case, as noted above, ultimate coercive relief would be injunctive.

The basic purpose of the Declaratory Judgment Act is to enable the courts to

---

3. 10 Del.C. § 6501 provides:
"§ 6501. Power of courts
"In cases of actual. controversy, except with respect to divorce or annulment of marriage, the Supreme Court, the Superior Court, the Court of Chancery, * * * upon petition, declaration, complaint, or other appropriate pleadings, may declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed, and such declaration shall have the force and effect of a final judgment or decree and be reviewable as such."

**592**

adjudicate a controversy prior to the time when a remedy is traditionally available and, thus, to advance to stage at which a matter is traditionally justiciable. Stabler v. Ramsay, 32 Del.Ch. 547, 88 A.2d 546 (1962). Given that purpose, the above tests, and our conclusion that a traditional equity jurisdiction is made to appear, it follows that the Chancery Court has jurisdiction to grant declaratory judgment relief in this cause.

\* \* \*

For these reasons, the judgment below must be reversed and the cause remanded for further proceedings not inconsistent herewith.