# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

BLACKSTONE POWER & NATURAL RESOURCES HOLDCO L.P.,

Plaintiff,

v.

NEXTERA ENERGY TRANSMISSION INVESTMENTS, LLC

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 2025-0644-KMM

Date Submitted: December 8, 2025
Date Decided: January 29, 2026

## <u>MEMORANDUM OPINION</u>

David E. Ross, Eric D. Selden, Ross Aronstam & Moritz LLP, Wilmington, Delaware; Eric Leon, Joseph Serino, Jr. (argued), Connor Clerkin, Latham & Watkins LLP, New York, New York; Jack McNeily Latham & Watkins LLP, Chicago Illinois; *Attorneys for Plaintiff*.

Albert H. Manwaring, IV, Kirsten A. Zeberkiewicz, Barnaby Grzaslewicz, Morris James LLP, Wilmington, Delaware; Enu A. Mainigi, Robert A. Van Kirk, Amanda M. MacDonald (argued), Leo Y. Ding, Raffaele B. Triggiano, Williams & Connolly LLP, Washington, DC; *Attorneys for Defendant*.

**Miller, J.**

# I.    INTRODUCTION

Plaintiff Blackstone Power & Natural Resources Holdco L.P. ("Blackstone") sold its interest in two electric infrastructure companies to Defendant Nextera Energy Transmission Investments, LLC ("Nextera") pursuant to a purchase and sale agreement. The agreement contemplated earn-out payments if certain defined projects, still in development at the time of the transaction, came to fruition. The parties' dispute is fueled by their competing views over whether certain projects qualify for earn-out payments. Blackstone takes the position that it is now entitled to earn-out payments. To that end, Blackstone seeks a declaratory judgment and brings a claim of breach of contract.

Nextera filed a motion to dismiss (the "Motion") under Rule 12(b)(1), or in the alternative 12(b)(6). Relevant here, Nextera argues that this court lacks subject matter jurisdiction because Blackstone's claims fail to invoke equity jurisdiction. One of Blackstone's causes of action is purely legal: breach of contract seeking monetary damages. Thus, Blackstone is left to anchor equitable jurisdiction to its request for a declaratory judgment. A review of the requested declaration, and the complaint, however, leads the Court to conclude that Blackstone has an adequate remedy at law. Because its complaint neither states an equitable claim nor seeks an equitable remedy, this court lacks subject matter jurisdiction. Accordingly, Nextera's Motion is *GRANTED*.

2

## II.    FACTUAL BACKGROUND[1]

### A.    *Nextera purchases GridLiance*

Nextera is an electric power and energy infrastructure company.[2]  In 2020, under a purchase and sale agreement (the "PSA"), Nextera acquired all of Blackstone's equity interest in two entities, GridLiance Holdco, LP and GridLiance GP, LLC (together "GridLiance").[3]  GridLiance specializes in developing and operating electric transmission infrastructure.[4]

As part of the purchase, Nextera acquired GridLiance West ("GLW"), a collection of transmission facilities in southwestern Nevada operated on the California Independent System Operator ("CAISO") transmission grid.[5]  CAISO is a regional transmission organization responsible for planning and approval of transmission projects within its region.[6]

Prior to Nextera's acquisition, GridLiance was in the early stages of an expansion of GLW that would connect GLW to southern California (the "Silverado Renewables Connection").[7]  The Silverado Renewables Connection was to occur over three phases and required approval of CAISO.  However, at the time of

---

[1] The facts are drawn from the operative complaint and the documents it incorporates by reference.
[2] D.I. 1 ("Compl.") ¶ 24.
[3] *Id.* ¶¶ 1, 27, Ex. A ("PSA").
[4] *Id.* ¶ 2.
[5] *Id.* ¶¶ 3, 20, 22, 24.
[6] *Id.* ¶¶ 3, 23.
[7] *Id.* ¶¶ 5, 24

Nextera's acquisition it was uncertain whether Phase II and Phase III of the Silverado Renewables Connection would ultimately receive CAISO approval.[8] If these phases were approved, GridLiance's value would significantly increase.[9]

## B. *The earn-out structure*

To account for that possibility, Nextera and Blackstone agreed to structure the transaction to include for the possibility of earn-out payments ("Earn-out Payments") tethered to the success of certain projects ("Earn-out Projects").[10] The parties specifically enumerated and defined Earn-out Projects, including Phase II of the Silverado Renewables Connection.[11]

Earn-out Payments comprised both quarterly payments ("Quarterly Earn-out Payments"), made for ten years after the Nextera's purchase of GridLiance (the "Earn-out Period"), and a final earn-out payment made at the end of the ten-year period.[12] The PSA required Quarterly Earn-out Payments to be calculated pursuant to a formula that added together

> 50% of the sum of (i) all expenditures paid by or on behalf of [Nextera]…during such calendar quarter in furtherance of the placement into service of any Earn-out Projects and (ii) all allowances for funds used by or on behalf of [Nextera]…during construction and any other amounts included as additional rate base for any Earn-out Projects actually placed into service during such calendar quarter[.][13]

---

[8] *Id.* ¶¶ 5, 8, 23, 25.
[9] *Id.* ¶¶ 4, 25.
[10] *Id.* ¶¶ 8, 26.
[11] PSA, Schedule D.
[12] Compl. ¶ 28; PSA § 2.06(a)–(b).
[13] PSA, Art. 1 at 13.

Together with the Quarterly Earn-out Payments, Nextera was to "deliver to [Blackstone's] Representative a statement setting forth [Nextera's] good faith determination of the Quarterly Earn-out Payment, together with [] reasonable supporting calculations and documents used in the preparation of such statement" (the "Earn-out Statement"). [14]

To complement the Earn-out Payments, the PSA further provided "that [Nextera], during the Earn-out Period, [] shall…(i) use Commercially Reasonable efforts to achieve placement into service of such Earn-out Projects and (ii) not take any action the principal purpose of which is to circumvent [Blackstone's] rights to Earn-out Payments[.]"[15]

## C. *The dispute resolution mechanism*

The PSA establishes a dispute resolution process in the event Blackstone "disput[es] any item set forth on any Earn-out Statement" (a "Disputed Item").[16] To initiate such a dispute, Blackstone first serves Nextera written notice of the dispute.[17] Thereafter, Blackstone and Nextera must "negotiate in good faith a resolution of all Disputed Items" for a period of thirty days following the delivery of Blackstone's

---

[14] *Id.* § 2.06(a).
[15] *Id.* § 2.06(c).
[16] *Id.* § 2.06(f)(i).
[17] *Id.*

written notice.[18] If any Disputed Items remain after the parties' negotiations, either party may submit those remaining items for resolution by an industry expert.[19] Depending on the nature of the remaining disputes, the parties "shall instruct the Industry Expert(s) to act as an expert in the utility industry, construction, engineering, regulatory, or accounting fields (as relevant) and not an arbitrator."[20] Within 30 days of the their submission, the industry expert is to "render a determination of all remaining Disputed Items, which shall [] include a written statement of such findings and conclusions and [] absent manifest error, be final and binding on the [p]arties[.]"[21]

## D.    *Relevant jurisdictional provisions*

Under the PSA the parties agreed to the "exclusive jurisdiction of the Delaware Court of Chancery or if [this court] declines to accept jurisdiction over a particular matter, any state or federal court in the State of Delaware for purposes of any proceeding directly or indirectly arising out of… [the PSA]."[22]

Under Section 10.13, the parties further stipulated "that irreparable damage would occur in the event that any provision of [the PSA] were not performed in

---

[18] *Id.* §§ 2.05 (b), 2.06(f)(ii) ("[T]he dispute resolution procedures applicable to…Section 2.05(b)…shall apply to all disputed items set forth in the Earn-out Dispute Notice.").
[19] *Id.* § 2.05 (b), 2.06(f)(ii).
[20] *Id.* § 2.06(f)(ii).
[21] *Id.* § 2.05(b).
[22] *Id.* § 10.09.

accordance with its specific terms or were otherwise breached…and…that monetary damages would be an inadequate remedy therefor."[23]

### E. *This litigation*

On June 9, 2025, Blackstone commenced this action by filing the Complaint, advancing claims for declaratory judgment (Count I) and breach of contract (Count II).[24]

At center of this suit is the parties' dispute over whether certain projects (the "Disputed Projects"), for which Nextera has received CAISO approval, fall within the PSA's definition of Phase II of the Silverado Renewables Connections and thus, qualify for Quarterly Earn-out Payments.[25] Blackstone seeks "a declaratory judgment that the Disputed Projects qualify as Earn-out Projects under the PSA and that Nextera must comply with all attendant obligations and requirements for such projects under the PSA."[26]

### III. PARTIES' CONTENTIONS

Nextera argues that Blackstone's request for declaratory judgment and claim for breach of contract do not invoke equity, thus this court lacks subject matter jurisdiction.[27]

---

[23] *Id.* § 10.13.
[24] Compl. ¶¶ 64–76.
[25] *Id.* ¶¶ 46–59.
[26] *Id.* ¶ 70.
[27] D.I. 12 (Opening Brief) at 33–37.

Blackstone contends subject matter jurisdiction is proper here because it lacks an adequate remedy at law for the declaratory judgment claim and this Court can exercise jurisdiction over the breach of contract claim under the cleanup doctrine.[28]

## IV. STANDARD OF REVIEW

A motion under Rule 12(b)(1) will be granted "if it appears from the record that the Court does not have jurisdiction over the claim."[29] The Court of Chancery, Delaware's Constitutional court of equity, "can acquire subject matter jurisdiction over a cause in only three ways, namely, if: (1) one or more of the plaintiff's claims for relief is equitable in character, (2) the plaintiff requests relief that is equitable in nature, or (3) subject matter jurisdiction is conferred by statute."[30] This court does not have jurisdiction to determine any matter where a "'sufficient remedy may be had at common law, or statute, before any other court or jurisdiction of this State.'"[31]

"The plaintiff bears the burden of establishing the Court's jurisdiction[.]"[32] "The court determines whether it has jurisdiction by looking at the face of the

---

[28] D.I. 26 (Answering Brief ("AB")) at 30–34.

[29] *Investview, Inc. v. UIU Holdings*, LLC, 2025 WL 3230992, at *3 (Del. Ch. Nov. 21, 2025) (internal citations and quotation marks omitted).

[30] *Alliance Compressors LLC v. Lennox Indus.*, 2020 WL 57897, at *3 (Del. Ch. Jan. 6, 2020) (quoting *Candlewood Timber Group, LLC v. Pan American Energy, LLC*, 859 A.2d 989, 997 (Del. 2004) (citing 10 *Del. C.* §§ 341, 342)).

[31] *Investview, Inc.*, 2025 WL 3250992, at *3 (quoting 10 *Del. C.* § 342).

[32] *Burkhart v. Genworth Fin. Inc.*, 250 A.3d 842, 851 (Del. Ch. 2020) (internal citations and quotation marks omitted).

8

complaint."[33]  But a court need not accept the complaint's allegations and is free to "conduct its own independent assessment to determine whether subject matter jurisdiction exists."[34]

## V.    ANALYSIS

To meet its burden, Blackstone relies entirely on its request for declaratory judgment.[35]  The Delaware Declaratory Judgment Act (the "Act") grants Delaware courts "within their jurisdiction" the "power to declare rights, status and other legal relations whether or not further relief is or could be claimed."[36]  But the "Act neither adds to nor subtracts from a court's subject matter jurisdiction."[37]  Thus, "whether subject matter jurisdiction rests with the Court of Chancery in a declaratory judgment action is 'determined without reference to the [Act],'"[38] and "the question

---

[33] *DBMP LLC v. Del. Claims Processing Facility, LLC*, 2025 WL 3013006, at *7 (Del. Ch. Oct. 24, 2025).

[34] *Id.*

[35] Blackstone also moved to dismiss under Rule 12(b)(1) because in the PSA, the parties agreed to an alternative dispute resolution ("ADR") mechanism.  Under such an analysis, the court actually has subject matter jurisdiction, but because of the parties' agreement, may decline to exercise its jurisdiction in favor of ADR. *Gandhi-Kapoor v. Hone Capital LLC*, 307 A.3d 328, 340–45 (Del. Ch. 2023) ("a motion to dismiss in favor of arbitration does not deprive a court of subject matter jurisdiction; it asks the court to enforce the parties' agreement to arbitrate and abstain from exercising jurisdiction that the court otherwise would have.").  Therefore, before the Court reaches the dispute over the ADR process, it must first determine whether equitable jurisdiction exists in the first instance. *Preston Hollow Cap. LLC v. Nuveen LLC*, 2019 WL 3801471, at *4 (Del. Ch. Aug. 13, 2019) ("Equitable jurisdiction is a predicate issue for every matter in this court of limited jurisdiction.").

[36] 10 *Del. C.* § 6501.

[37] *DBMP LLC*, 2025 WL 3013006, at *9.

[38] *Athene Life and Annuity Co. v. Am. Gen. Life Ins. Co.*, 2019 WL 3451376, at *5 (Del. Ch. July 19, 2019) (quoting *Jefferson Chem. Co. v. Mobay Chem. Co.*, 253 A.2d 512, 514 (Del. Ch. 1969)).

remains whether 'there is any underlying basis for equity jurisdiction measured by traditional standards.'"[39]

Blackstone does not pair its request for declaratory judgment with a request for a traditional equitable remedy. Rather, Blackstone asserts that the declaratory judgment request alone is sufficient because "[t]here is no adequate remedy at law."[40] That is, Blackstone's purported equitable remedy is a legal determination on the correct interpretation of an Earn-out Project under the PSA.[41]

In determining whether a claimant has an adequate remedy at law, "[t]he question is whether the remedy available at law will afford the plaintiff full, fair, and complete relief."[42] This jurisdictional inquiry requires "a close examination of the plaintiff's claims" and the relief actually sought.[43] "[A] mere allegation that there is no adequate remedy at law is insufficient to end the inquiry if such allegation is a mere façade."[44] And "[w]here 'money damages will suffice to remedy any alleged

---

[39] *DBMP LLC*, 2025 WL 3013006, at *10 (quoting *Diebold Computer Leasing, Inc. v. Commercial Credit Corp.*, 267 A.2d 586, 591 (Del. 1970)).

[40] Compl. 69; AB at 29–34.

[41] AB at 34 ("[Blackstone] brought a claim for declaratory relief asking this Court to resolve this dispute by, among other things, interpreting the contract term 'Earn-out Project' as a matter of law.").

[42] *Qlarant, Inc.*, 2022 WL 211367, at *3 (internal quotations and citations omitted) (cleaned up).

[43] *Id.*

[44] *Athene*, 2019 WL 3451376, at *4.

breach to date, and declaratory relief will establish the proper procedure' for payment of damages, there is no need for equitable relief."[45]

Under Blackstone's view, it cannot obtain adequate legal relief because, at present, "it is impossible for [Blackstone] to quantify with certainty the Earn-out Payments owed on the ongoing Disputed Projects, let alone any additional Earn-out Projects."[46] Namely because "the framework of the PSA's earn-out provisions reflects the reality that the Earn-out Payments owed to [Blackstone] under the PSA cannot be calculated with reasonable certainty until the conclusion of the ten-year Earn-out Period."[47] Blackstone further argues that Nextera, "through GridLiance, may be developing other projects, in addition to the Disputed Projects that also qualify as Earn-out Projects but have not been disclosed to [Blackstone] because of [Nextera's] erroneous interpretation of the PSA."[48] And it additionally argues that the parties' stipulation of inadequate money damages supports the finding of an inadequate remedy at law.[49]

## A. *Contractually stipulated inadequate money damages*

While the PSA reflects the parties' agreement that money damages are an inadequate remedy, "parties may not confer subject matter jurisdiction by

---

[45] *Epic/ Freedom, LLC v. Aveanna Healthcare*, *LLC*, 2021 WL 1049469, at *3 (Del. Ch. Mar. 19, 2021) (quoting *Alliance*, 2020 WL 57897, at *5).
[46] AB at 30–31.
[47] *Id.* at 32.
[48] *Id.*; Compl. ¶ 51.
[49] AB at 32–33; PSA § 10.13.

11

agreement[.]"[50]   Blackstone recognizes this principle but still argues that the Court

must give weight to Section 10.13 in a subject matter jurisdiction determination.[51]

This "Court will consider contractual stipulations of irreparable harm [and

inadequate money damages] in connection with exercising its discretion to award

[equitable] relief[.]"[52]   However, if the facts as pled do not warrant a finding of

equitable jurisdiction, "*this Court is not required to ignore those facts*[]" in favor of

a contractual provision.[53]   Thus, Section 10.13 alone will not operate as a method by

which the Court will acquire subject matter jurisdiction.[54]   Blackstone bears the

burden of showing that a legal remedy is inadequate.

**B.**      ***Blackstone has an adequate remedy at law.***

Blackstone's allegations in the Complaint do not support a finding of an

inadequate remedy at law.   In coming to this conclusion, the Court finds *Alliance*

---

[50] *Thompson v. Lynch*, 990 A.2d 432, 434 (Del. 2010).

[51] AB at 32–33.

[52] *HB Next LLC v. Goodman*, 2025 WL 3174629, at *5 (Del. Ch. Oct. 31, 2025).   The cases Blackstone cites for support confirm this proposition.   *See, e.g., Am. Healthcare Admin. Servs., Inc. v. Aizen*, 285 A.3d 461, 495–96 (Del. Ch. 2022); *Hexion Specialty Chems., Inc. v. Huntsman Corp.*, 965 A.2d 715, 762 (Del. Ch. 2008); *Gildor v. Optical Sols. Inc.*, 2006 WL 4782348 at *10–11 (Del. Ch. June 5, 2006); *Kansas City S. v. Grupo TMM, S.A.*, 2003 WL 22659332, at *5 (Del. Ch. Nov. 4, 2003).

[53] *Quarum v. Mitchell Int'l., Inc.*, 2019 WL 158153, at *3 (Del. Ch. Jan. 10, 2019) (quoting *Kansas City S.*, 2003 WL 22659332, at *5) (emphasis original).

[54] *See HB Next LLC*, 2025 WL 3174629, at *5 (finding that despite a contractual provision stating a "remedy at law for any breach of this [agreement] will be inadequate" the court was still required to undertake an "independent inquiry" as to subject matter jurisdiction); *see also Endowment Research Group, LLC v. Wildcat Venture Partners, LLC*, 2021 WL 841049, at *7–8 (Del. Ch. Mar. 21, 2021) (finding the facts as pled and claims involved "lend themselves to equitable remedies." Then finding the parties' stipulation that money damages would not provide an adequate remedy at law among the factors that "bolster[ed]" the finding of equity jurisdiction).

*Compressors LLC v. Lennox Industries Inc.* instructive.[55]  In *Alliance*, the parties entered into a supply agreement under which defendant agreed to purchase from plaintiff "a certain minimum percentage of the total number of [air] compressors" that defendant required until 2046.[56]  Under the supply agreement, the specific number of compressors to be bought in any given year was tied to "the total number of compressors…that [were] used in such year by [defendant] to satisfy the production needs of the Business."[57]  Thereafter, defendant informed plaintiff that defendant intended to use a different calculation, allegedly in an attempt to avoid the compressor purchase obligation.[58]

Plaintiff brought suit in this court seeking declaratory relief and specific performance.[59] Defendant moved to dismiss for lack of subject matter jurisdiction.[60] Plaintiff argued that jurisdiction was proper because it had no adequate remedy at law: first, because the supply agreement had more than twenty-five years left on its term, and absent specific performance, it would be deprived of its benefit of the bargain;[61] and second, because damages would be difficult to quantify as sales to defendant were based on defendant's usage of air compressors, which changed from

---

[55] 2020 WL 57897 (Del. Ch. Jan. 6, 2020).
[56] *Id.* at *1.
[57] *Id.*
[58] *Id.* at *2.
[59] *Id.*
[60] *Id.*
[61] *Id.* at *3.

13

year to year.[62]   The *Alliance* court rejected plaintiff's arguments and found that plaintiff had an adequate remedy at law.  A review of the complaint led the *Alliance* court to conclude that money damages would suffice to remedy any breach to date and a declaratory judgment would establish the proper method of calculating compressors purchase requirements.[63]

Here, just as in *Alliance*, the door to equity does not open simply because an agreement contemplates variable future payments.  Damages, now and in the future, are readily calculable using the parties' Quarterly Earn-Out Payment calculation. Should Blackstone prevail in its request for declaratory judgment, the Disputed Projects would consequently become Earn-out Projects.  At that point, the PSA would control, including the parties' well-defined calculation, entitling Blackstone to damages in the amount of Quarterly Earn-out Payments to date, and additional Quarterly Earn-out Payments as development of the Earn-out Projects continued.[64]

---

[62] *Id.*

[63] *Id.* at \*5.

[64] For support Blackstone cites *Amaysing Technologies Corp. v. Cyberair Communications, Inc.* 2004 WL 1192602 (Del. Ch. May 28, 2004).  This case is distinguishable.  In *Amaysing*, the court found the plaintiff lacked an adequate remedy at law because money damages would be "nearly impossible" to measure. *Id.* at \*5. The dispute stemmed from a bridge loan, under which defendant funded plaintiff's novel technology business. *Id.* at \*1. When defendant refused to pay the full amount of the loan, plaintiff sued. *Id.* Plaintiff argued that defendant's failure to pay the loan prevented it from developing and completing the technology, and that calculation of potential profits would be speculative given the technology's novel nature and its undeveloped market. *Id.* at \*4. The court followed plaintiff's reasoning and found that '[b]ecause such damages are likely merely speculative, [plaintiff] has no adequate remedy at law…." *Id.* at \*5.
Here, there is no novel technology or unestablished market.  Damages are calculable using the Quarterly Earn-Out calculation.

Any future issue that "may" arise as to unidentified disputed projects is speculative at best, such that a declaration addressing them would amount to instructing Nextera to "'go, and breach no more'…and [is] thus inappropriate."[65]

## VI. CONCLUSION

Blackstone has an adequate remedy at law. Accordingly, the Court of Chancery cannot exercise subject matter jurisdiction over its claims and Nextera's Motion is GRANTED. Blackstone may elect to transfer this case to the Superior Court pursuant to 10 *Del. C.* § 1902 within 60 days.

If Blackstone elects to transfer the case, the parties are to meet and confer and advise the Court whether the remainder of the issues, presented by the fully-briefed motion and oral argument, are then ripe for the Superior Court to decide.

_/s/Kathleen M. Miller_
Kathleen M. Miller, Judge[66]

---

[65] *Alliance*, 2020 WL 57897, at *5 (quoting *Athene*, 2019 WL 3451376, at *7). The *Alliance* court relied heavily upon this court's decision in *Athene Life and Annuity Co. v. Am. Gen. Life Ins. Co.* 2019 WL 3451376 (Del. Ch. July 31, 2019). In *Athene*, plaintiff sought two equitable remedies, specific performance coupled with a claim of breach of contract and an injunction coupled with a claim for declaratory judgment. *Id.* at *3. Plaintiff argued that the equitable relief sought was necessary because it had no adequate remedy at law based on the now familiar argument that money damages alone could not prevent a future of breach of contract. *Id.* at *7. The court rejected plaintiff's arguments. It found money damages sufficient to remedy the alleged harm to date and made clear that this court "does not enjoin hypothetical future breaches of contract." *Id.* at *8 ("No court order (even in equity) is self-enforcing[.]").

[66] Sitting as a Vice Chancellor by designation. D.I. 2.

15