COURT OF CHANCERY
OF THE
STATE OF DELAWARE

DONALD F. PARSONS, JR.
VICE CHANCELLOR

New Castle County Courthouse
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted: July 9, 2015
Date Decided: July 14, 2015

Joseph C. Handlon, Esq.
Roopa Sabesan, Esq.
Meredith Stewart Tweedie, Esq.
Delaware Department of Justice
820 North French Street
Wilmington, DE 19801

Richard H. Morse, Esq.
American Civil Liberties Union
Foundation of Delaware
100 West 10th Street
Wilmington, DE 19801

RE:  *Doe, et al. v. Coupe*
Civil Action No. 10983-VCP

Dear Counsel:

The plaintiffs bring this action against the Commissioner of the Delaware Department of Correction, seeking an order preliminarily and permanently enjoining the defendant from continuing to require that the plaintiffs wear GPS monitor ankle bracelets, and declaring that the statute pursuant to which the defendant enforces the GPS monitoring requirement is unconstitutional. The defendant moved under Court of Chancery Rule 12(b)(1) to dismiss the complaint for lack of subject matter jurisdiction. For the reasons set forth herein, I deny the motion.

## I.     BACKGROUND

Plaintiffs, Mary Doe, John Doe 1, and John Doe 2,[1] are citizens and residents of Delaware.  They previously were convicted and incarcerated for sex crimes, and each now is on either probation or parole.  As a result of their criminal records, each Plaintiff has been assigned to "Risk Assessment Tier III" of the sex offender registry administered by the Delaware State Bureau of Investigation pursuant to 11 *Del. C.* § 4121.  In 2007, that statute was amended to require that, "Notwithstanding any provision of this section or title to the contrary, any Tier III sex offender being monitored at Level IV, III, II or I, shall as a condition of their probation, wear a GPS locator ankle bracelet paid for by the probationer."[2]  In the case of each Plaintiff, the GPS monitor requirement was enacted after he or she was convicted of the offenses that have resulted in his or her status as a registered sex offender.[3]  Plaintiffs aver that no government agency has made a finding that

---

[1]     The Court signed an order on April 30, 2015, granting Plaintiffs' motion to file and proceed using pseudonyms.  Docket Item No. 2.

[2]     11 *Del. C.* §4121(u) [hereinafter the "GPS Monitoring Statute"]; *see* 76 Del. Laws, ch. 123, § 1 (2007).

[3]     Mary Doe was convicted in New York  in 1992 and incarcerated there from 1991 to 2010.  Compl. ¶ 9.  John Doe 1 was convicted in Delaware in 1979 and incarcerated here until 2009.  *Id*. ¶ 24.  John Doe 2 was convicted in 2001 and incarcerated until 2009.  *Id*. ¶ 35.

any of them poses a continuing danger such that requiring them to wear the GPS monitor bracelets would increase public safety.[4]

Plaintiffs commenced this action against Defendant, Robert M. Coupe, the Commissioner of the Delaware Department of Correction, on May 4, 2015. The Probation and Parole section of the Department of Correction administers the GPS Monitoring Statute. By this action, Plaintiffs seek an order of this Court "preliminarily and permanently enjoining [D]efendant from requiring them to continue wearing the GPS devices. Plaintiffs also seek a declaration that 11 *Del. C.* § 4121(u) on its face and as applied by [D]efendant violates the Fourth Amendment to the United States Constitution,"[5] or that the application of the GPS Monitoring Statute to individuals, such as Plaintiffs, convicted of sex offenses before the statute's effective date, July 12, 2007, violates the Ex Post Facto clause of the U.S. Constitution. Plaintiffs also challenge the statute facially and as applied under Article I, § 6 of the Delaware Constitution.

Defendant moved to dismiss the Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. Defendant contends that Plaintiffs have an adequate

---

[4] *E.g., id.* ¶ 2.

[5] *Id.* ¶ 6.

remedy at law because they have the ability to obtain a declaration from the Superior Court that the GPS Monitoring Statute is unconstitutional, either facially or as applied to Plaintiffs. Defendant contends, moreover, that should such a declaratory judgment issue, it would be "self-executing," requiring no further injunctive relief to enforce it. Plaintiffs counter by arguing that the core relief they seek is equitable in nature—*i.e.*, an injunction requiring Defendant to stop forcing Plaintiffs to wear the GPS-monitoring ankle bracelets. Thus, Plaintiffs assert that, notwithstanding that the Superior Court conceivably could adjudicate the constitutionality of the GPS Monitoring Statute and render a declaratory judgment in that regard, subject matter jurisdiction is proper in the Court of Chancery because the ultimate relief Plaintiffs seek is equitable in nature.

## II.      ANALYSIS

### A.      Legal Standard

The Court of Chancery is a court of limited jurisdiction. It does "not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State."[6] Absent a statutory delegation of subject matter jurisdiction, this Court can acquire

---

[6]      10 *Del. C.* § 342.

subject matter jurisdiction over a case only if a plaintiff: (1) invokes an equitable

right; or (2) requests an equitable remedy when there is no adequate remedy at

law.[7]  The plaintiff bears the burden of establishing that this Court has subject

matter jurisdiction.[8]  In making its determination as to subject matter jurisdiction,

the court must review the allegations of the complaint as a whole to determine the

true nature of the claim.[9]  Determining whether a plaintiff truly seeks equitable

relief is a context-specific inquiry.  As stated by then-Vice Chancellor Chandler:

> It has been frequently said that this Court, in determining jurisdiction, will go behind the "facade of prayers" to determine the "true reason" for which the plaintiff has brought suit.  By this it is meant that a judge in equity will take a practical view of the complaint, and will not permit a suit to be brought in Chancery where a complete legal remedy otherwise exists but where the plaintiff has prayed for some type of traditional equitable relief as a kind of formulaic "open sesame" to the Court of

---

[7]  *Israel Disc. Bank of N.Y. v. First State Depository Co.*, 2012 WL 4459802, at *4 (Del. Ch. Sept. 27, 2012), *aff'd*, 86 A.3d 1118 (Del. 2014).

[8]  *Charlotte Broad., LLC v. Davis Broad. of Atlanta LLC*, 2013 WL 1405509, at *3 (Del. Ch. Apr. 2, 2013).  "Equitable jurisdiction must be determined from the face of the complaint as of the time of filing, with all material factual allegations viewed as true." *Int'l Bus. Machines Corp. v. Comdisco, Inc.*, 602 A.2d 74, 78 (Del. Ch. 1991) (citing *Diebold Computer Leasing, Inc. v. Commercial Credit Corp.*, 267 A.2d 586 (Del. 1970)).

[9]  *Charlotte Broad., LLC*, 2013 WL 1405509, at *3.

> Chancery. A practical analysis of the adequacy of any legal remedy, then, must be the point of departure for each matter which comes before this Court.[10]

**B.      This Court Has Subject Matter Jurisdiction over Plaintiffs' Claims**

With the foregoing principles in mind, I conclude that this Court does have subject matter jurisdiction over Plaintiffs' claims, because those claims truly seek equitable relief and it is not clear that Plaintiffs could obtain an adequate remedy at law. The principal relief sought in the Complaint is an order requiring that the Department of Correction stop forcing Plaintiffs to wear the GPS-monitoring ankle bracelets. Plaintiffs have shown that the harms the GPS monitors allegedly inflict upon them probably cannot be cured by a legal remedy such as damages.[11] For example, Plaintiff Mary Doe alleges that her ankle bracelet, which weighs five pounds, causes soreness and abrasions, and makes it difficult to bathe or sleep.[12] She further avers that because of the public questioning that results from the ankle

---

[10]      *Comdisco, Inc.*, 602 A.2d at 78 (citations omitted).

[11]      Compl. ¶¶ 19-22, 31-33.

[12]      *Id.* ¶ 19.

bracelet, she must wear long pants at all times, and has been unable to swim on family vacations with her fiancé and children.[13]

It ultimately may be the case that all of Plaintiffs' allegations in this regard are unfounded, or that their grievances, while legitimate, are insufficient to merit injunctive relief, assuming the GPS Monitoring Statute is determined to be unconstitutional. I express no opinion on the merits of the constitutional issues here or as to whether Plaintiffs otherwise satisfy the requirements for injunctive relief, except to find that their claims for such relief are at least colorable. Taking those allegations as true for purposes of this motion to dismiss, however, I am convinced that, going beyond "the 'facade of prayers' to determine the 'true reason' for which the plaintiff has brought suit,"[14] as our case law instructs me to do, the nature of the relief sought by Plaintiffs is equitable. Plaintiffs primarily seek to have the GPS monitor bracelets removed from their ankles; no legal remedy would be adequate to redress that grievance. For that reason, I find this case distinguishable from several cases cited by Defendant in which the plaintiffs truly were seeking legal remedies but "prayed for some type of traditional

---

[13]    *Id*. ¶¶ 20, 14.

[14]    *Comdisco, Inc.*, 602 A.2d at 78.

equitable relief as a kind of formulaic 'open sesame' to the Court of Chancery."[15]

Plaintiffs' claims here genuinely seek injunctive relief not available elsewhere; therefore, this Court has jurisdiction over such claims.

In arguing for a contrary conclusion, Defendant urges me to dismiss the Complaint on the grounds that Plaintiffs do not really "need" injunctive relief because they could file in Superior Court for a declaratory judgment as to the GPS Monitoring Statute, and that such a judgment would be "final" and would obviate the need for any further injunction (assuming Defendant abides by the judgment). I do not question the premises of this argument: Plaintiffs conceivably could obtain a declaratory judgment in Superior Court as to the Statute's constitutionality, and I consider it reasonable to assume that the Department of Correction would not continue enforcing the GPS Monitoring Statute if it were judged unconstitutional. Defendant's conclusion, however, does not follow.

One problem with Defendant's argument is its misplaced reliance on 10 *Del. C.* § 6501, the "Declaratory Judgment Act." Section 6501 states that:

> Except where the Constitution of this State provides otherwise, courts of record within their respective jurisdictions shall have power to declare rights, status and

---

[15] *Id.*

> other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declaration shall have the force and effect of a final judgment or decree.[16]

The Declaratory Judgment Act operates to ensure that, if a court would have subject matter jurisdiction over a certain lawsuit, no party to that suit can preclude the court from hearing the case ("declar[ing] rights, status and other legal relations") merely because "no further relief is or could be claimed." In other words, a party cannot object that its opponent merely seeks a "declaratory judgment."

As the Delaware Supreme Court stated in *Diebold Computer Leasing, Inc. v. Commercial Credit Corp.*, "The basic purpose of the Declaratory Judgment Act is to enable the courts to adjudicate a controversy prior to the time when a remedy is traditionally available and, thus, to advance to [a] stage at which a matter is traditionally justiciable."[17] Critically, however, the Declaratory Judgment Act cannot and does not divest this Court or any court of subject matter jurisdiction as

---

[16]     10 *Del. C.* § 6501.

[17]     267 A.2d 586, 591-92 (Del. 1970).

to a particular case, if such jurisdiction would be proper according to the traditional principles for determining that issue.[18] Our law does not support Defendant's attempt to use the Declaratory Judgment Act as a means to deprive this Court of subject matter jurisdiction over a case in which Plaintiffs truly seek equitable relief.[19]

---

[18] *Id.* at 591 ("We conclude, therefore, that subject-matter jurisdiction in Chancery appeared in this cause in the form of the traditional jurisdiction of equity over threatened breach of contract. . . . That jurisdiction was not divested by our Declaratory Judgment Act, 10 *Del. C.* § 6501. While it is conceivable that, under § 6501, [Plaintiff] may have brought a declaratory judgment action in the Superior Court for a construction of the Loan Agreement, and that, for practical purposes, such action may have furnished an adequate remedy, it does not follow that the creation of such remedy by § 6501 divested the Chancery Court of the traditional jurisdiction we have found it possessed in this case. It is settled that Chancery jurisdiction remains, notwithstanding the statutory creation of jurisdiction of the subject matter in another court and a remedy elsewhere that may be adequate, *unless the new remedy is equivalent and is expressly made exclusive in the other tribunal*. . . . Obviously, the Declaratory Judgment Act does not fulfill the tests required for the ouster of equity jurisdiction.") (footnotes omitted) (emphasis added) (citing *DuPont v. DuPont*, 85 A.2d 724, 729-30 (Del. 1951)).

[19] I note that the Delaware Supreme Court has continued to cite the 1970 *Diebold* opinion and employ the same test for determining the Court of Chancery's subject matter jurisdiction. *See Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004) ("In deciding whether or not equitable jurisdiction exists, the Court must look beyond the remedies nominally being sought, and focus upon the allegations of the complaint in light of what the plaintiff really seeks to gain by bringing his or her claim.")

In the circumstances of this case, Plaintiffs seek both preliminary and permanent injunctive relief barring Defendant from continuing to require them to wear GPS-monitoring ankle bracelets. As previously discussed, a declaratory judgment in Superior Court that the GPS Monitoring Statute is unconstitutional, coupled with Defendant's presumed adherence to such a ruling, might provide an adequate remedy at law in comparison to a permanent injunction.[20] I know of no basis to conclude, however, that the Superior Court could provide the equivalent of a preliminary injunction. In that regard, Plaintiffs would face a difficult challenge in trying to meet the requirements for a preliminary injunction in this case.

---

(citing *Diebold Computer Leasing, Inc.*, 267 A.2d 586); *see also, e.g.*, *Nelson v. Russo*, 844 A.2d 301, 302 (Del. 2004) (same); *Shearin v. Mother AUMP Church*, 755 A.2d 390 (Del. 2000) (same).

[20] It also might not be true that Plaintiffs would be able to proceed in that manner. Even though 10 *Del. C.* § 6501 enables courts to render declaratory judgments, it does not obviate the need for a real case or controversy. *See Stroud v. Milliken Enters., Inc.*, 552 A.2d 476, 479 (Del. 1989) ("While the Declaratory Judgment statute . . . may be employed as a procedural device to advance the stage at which a matter is traditionally justiciable, the statute is not to be used as a means of eliciting advisory opinions from the courts.") (internal quotation marks and citations omitted). For example, Plaintiffs conceivably might have to base a claim for declaratory relief in the Superior Court on a damages claim against Defendant. Such a claim likely would be subject to a defense of qualified immunity, which, if successful, might mean that the Court would not reach the constitutional issue underlying Plaintiffs' claim here for injunctive relief.

Nevertheless, they have stated at least a colorable claim for such relief. Thus, I am not persuaded there is an adequate and equivalent remedy at law here.

*Reed v. Brady*,[21] on which Defendant relies, also supports my conclusion. In that case, the plaintiff sought declaratory and injunctive relief against the Delaware Attorney General. After examining the nature of the plaintiff's claims in *Reed*, in accordance with *Comdisco* and other cases I have relied on here, the Court concluded that each of the bases for the plaintiff's complaint was "nothing more than a legal claim dressed in equitable clothing."[22] It was on that basis—not because of the Declaratory Judgment Act and the purportedly "self-executing" nature of declaratory judgments rendered by our courts of law—that the Court found no basis for subject matter jurisdiction in the Court of Chancery in the *Reed* case. The same was true in *Christiana Town Center, LLC v. New Castle County*, which Defendant also cites in this regard.[23]

---

[21] 2002 WL 1402238, at *3 (Del. Ch. June 21, 2002), *aff'd*, 818 A.2d 150 (Del. 2003).

[22] *Id*. at *3-6. One of the four purported claims was dismissed under Rule 12(b)(6), rather than for lack of subject matter jurisdiction under 12(b)(1). *Id*. at *3.

[23] *Christiana Town Ctr., LLC v. New Castle Cty.*, 2003 WL 21314499, at *4 (Del. Ch. June 6, 2003) ("[A] plain reading [of the complaint] shows that all

Neither *Christiana Town Center* nor *Reed* stands for the proposition that Defendant seems to be urging in this case, which appears to be that, in any case where the defendant is a government agency and the plaintiff conceivably could obtain a declaratory judgment as to a legal issue against that defendant in Superior Court, the Court of Chancery is divested of subject matter jurisdiction regardless of the true nature of the relief being sought. Such a proposition is contrary to *Diebold* and numerous later decisions of the Delaware Supreme Court. In my opinion, *Reed*, *Christiana Town Center*, *Diebold*, and every other case the parties cite here follow the same rule: "In deciding whether or not equitable jurisdiction exists, the Court must look beyond the remedies nominally being sought, and focus upon the allegations of the complaint in light of what the plaintiff really seeks to gain by bringing his or her claim."[24]

As discussed above, when I apply that rule to the particular circumstances of this case, I come to a different conclusion as to the true nature of Plaintiff's claims here than did the Court in *Reed* or *Christiana Town Center*. Nor do I dispute that

---

[the plaintiff] realistically seeks is a declaratory judgment as to the meaning and scope of the UDC Clean Hands Provision."), *aff'd*, 841 A.2d 307 (Del. 2004).

[24] *Candlewood Timber Gp., LLC*, 859 A.2d at 997.

in this case and others like it, subject matter jurisdiction also might be proper in Superior Court. For that reason, I disagree with Defendant's assertion that, "Plaintiff's argument, taken to its logical conclusion, would bar any declaratory judgment action in Superior Court because a party would simply argue that, because the Superior Court cannot issue injunctions, it cannot enforce a declaration."[25] The preliminary showing that a plaintiff must make is that subject matter jurisdiction is proper in this Court based on: (1) a statutory grant of jurisdiction; (2) the invocation by a plaintiff of an equitable right; or (3) a request for an equitable remedy to redress a harm for which there is no adequate remedy at law. If this Court finds that one or more of those criteria are met in the case at hand, it does not follow, as Defendant suggests, that an action for declaratory judgment in Superior Court necessarily would be barred. What follows is simply that the action also *may* proceed in this Court. Plaintiff has made the requisite preliminary showing that subject matter jurisdiction exists in the Court of Chancery. Thus, Defendant has not shown he is entitled to a dismissal for lack of jurisdiction.

---

[25]    Def.'s Reply Br. 3.

A related objection raised by Defendants is that, if this case is allowed to proceed in the Court of Chancery, it will amount to a usurpation of the Superior Court's authority to adjudicate and enforce Delaware's criminal statutes, and would open the floodgates to similar claims by criminal defendants who seek some relief from the Department of Correction or other law enforcement bodies. Understandably, this Court historically has been careful not to interject itself into the law enforcement functions that properly fall within the jurisdiction of Delaware's courts of law. This case does not threaten to disrupt that balance. It is not a criminal action. Plaintiffs here do not challenge any aspect of their criminal sentences; indeed at least one of those sentences are for convictions rendered outside of Delaware, and all of them pre-date the enactment of the GPS Monitoring Statute. Plaintiffs here challenge the requirement that they must wear GPS ankle bracelets, which requirement the Department of Correction administers in a ministerial capacity. The fact of Plaintiffs' current status as parolees or probationers is one that may or may not impact the analysis of the merits of this case. That fact, however, does not convert this civil action in which Plaintiffs seek equitable relief into an "active criminal matter," as Defendant seems to argue.

### III.     CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is denied.

**IT IS SO ORDERED**.

Sincerely,

*/s/ Donald F. Parsons, Jr.*

Donald F. Parsons, Jr.
Vice Chancellor

DFP/ptp